NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSE ANN PARISI,<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No. 17-2876 (SDW)<br><br>**OPINION**<br><br>March 27, 2018 |

**WIGENTON,** District Judge.

  Before this Court is Plaintiff Rose Ann Parisi's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Michael A. Rodriguez's ("ALJ Rodriguez") denial of her claim for supplemental security income under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Rodriguez's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On March 4, 2013, Plaintiff filed an application for supplemental security income, alleging disability beginning December 15, 2009 due to anxiety, sciatica, neuropathy in both legs, migraines, arthritis, a broken right foot, and a cyst in her right kneecap. (Administrative Record 13, 194, 211.) [hereinafter Tr.] Her claim was denied on July 25, 2013, and again on reconsideration on January 15, 2014. (Tr. 13.) Plaintiff then filed a written request for a hearing on January 30, 2014. (*Id.*) On July 16, 2015, Plaintiff appeared and testified at an administrative hearing before ALJ Rodriguez in Newark, New Jersey. (*Id.*) Vocational Expert Mary D. Anderson also testified. (*Id.*) Subsequently, ALJ Rodriguez concluded that Plaintiff was not disabled under § 1614(a)(3)(A) of the Act from March 4, 2013 through the date of his decision on October 26, 2015. (Tr. 13, 22.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was twenty-nine years old at the alleged onset of her disability in 2009. (Tr. 194.) At the administrative hearing, she testified that her highest level of education was the eleventh grade, and that while she was in school, she took special education classes. (Tr. 43-45.)

Plaintiff previously worked as a babysitter and receptionist. (Tr. 47-50.) Her last significant employment was as a part-time receptionist at a nursing home in 2008. (*Id.*) In that position, she answered phones, greeted visitors, took care of supplies, created handbooks for new employees, and worked on a computer. (Tr. 213.) She sat for four hours a day, and would lift and carry boxes that were no more than ten pounds. (*Id.*) Plaintiff has not worked since 2008. (Tr. 46, 49, 211.)

### 2. Medical History

The record demonstrates that medical practitioners examined, consulted, and treated Plaintiff for the physical symptoms associated with her disability claim. Internist Dr. Shubhangi Thakur ("Dr. Thakur") noted Plaintiff's history of backaches, knee pain, and foot pain, all on her right side. (Tr. 278.) Plaintiff sustained a right-foot fracture in 2007, which was undiagnosed and treated as a sprain. (Tr. 15, 405.) In 2011, she met with Dr. Varun Gujral, DPM, presenting with an "old cuboid fracture" and tendonitis. (Tr. 298.) In 2015, she consulted with Dr. Robert Neufield, DPM, complaining of a bunion on her left foot. (Tr. 405-06.) A nerve conduction study of her lower extremities in March 2013 indicated that she had neuropathy. (Tr. 304-07.)

On August 14, 2013, Plaintiff was involved in a motor vehicle accident, which worsened her symptoms. (Tr. 20, 242, 244.) Afterwards, an x-ray of her lumbar spine showed mild degenerative changes, and no compression fractures or subluxation, (Tr. 295); and an x-ray of her cervical spine showed no gross degenerative changes, compression fractures, or subluxation, (Tr. 297). However, MRIs conducted in October 2013 showed disc bulges in the cervical, thoracic, and lumbar spine, as well as mild lumbar facet hypertrophy. (Tr. 15, 308-10.)

Plaintiff underwent physical therapy treatment from August 14, 2013 through December 17, 2013. (Tr. 319-65.) She also received epidural injections in October 2013, November 2013, and January 2014. (Tr. 314-17, 377-79.) As of January 2014, Plaintiff was taking the following prescribed medications for her physical symptoms: Flexeril (a muscle relaxer), Meloxicam (for arthritis), Pepcid (for stomach ulcers), Percocet (for pain), and Roxicet (for pain). (Tr. 245.)

### 3. Mental Health Treatment

The record demonstrates that Plaintiff has had a minimal degree of mental health treatment. (Tr. 16.) According to Dr. Thakur's examination report, dated February 23, 2015,

Plaintiff suffers from migraines and chronic anxiety. (Tr. 404.) He prescribes the following medications for her symptoms: Ambien (for insomnia), Zoloft (for depression), Fioricet (for migraines), Amitripyline (for anxiety), Xanax (for anxiety), and Ativan (for anxiety). (Tr. 245, 263, 404.)

On July 22, 2013, Ernesto L. Perdomo, Ph.D. conducted a psychological evaluation of Plaintiff to assist Disability Determination Services ("DDS"). (Tr. 283-85.) He noted that Plaintiff does not have a history of psychiatric hospitalization, and that she last had outpatient care through her special education program in high school. (Tr. 283-84.) He found no indications of thought disorders or psychosis, but diagnosed Plaintiff with unspecified learning disabilities, depression, and panic attacks. (Tr. 284-85.)

### 4. Function Report

Plaintiff completed a function report on April 13, 2013, in which she described her daily activities as taking her then eleven-year-old daughter to and from school, but otherwise staying at home. (Tr. 16, 218-25.) Plaintiff reported that she is capable of driving, going out alone, cleaning her house, preparing simple meals, and walking with a cane. (*Id.*) She has difficulty moving, sleeping, concentrating, and handling stress. (*Id.*)

### 5. Hearing Testimony

ALJ Rodriguez held a hearing on July 16, 2015, during which Plaintiff and Vocational Expert Mary Anderson ("VE Anderson") testified. (Tr. 27.) Plaintiff stated that she lives with her daughter in an apartment; her mother and uncle take turns staying with her. (Tr. 39-42.) Plaintiff has not worked since 2008, when she was a part-time receptionist at a nursing home. (Tr. 46-47.) She receives child support and public assistance, including food stamps, rent support, and Medicaid. (Tr. 86-87, 284.)

Plaintiff testified that she has suffered from migraines since she was sixteen years old, and that she now experiences them three times a week. (Tr. 51.) She stated that she has a history of sciatica in her left leg, and neuropathy in both legs, arms, and hands. (Tr. 56-58, 73.) In August 2014, Plaintiff was in a car accident that caused bulging and slipped discs. (Tr. 59.) Plaintiff also testified as to her broken and arthritic foot, which she stated would require surgery. (Tr. 61-63.) In addition, she reported being diagnosed with knee arthritis, spinal stenosis, and kidney stones. (Tr. 78, 84.) She uses a cane, which her doctor prescribed. (Tr. 76.) Although she knows how to drive, she chooses not to because of the numbness in her arms and legs. (Tr. 80.) She anticipated undergoing testing for multiple sclerosis in the near future. (Tr. 85-86.)

Plaintiff stated that she was not seeing a mental health professional, and had not seen one since she was in high school. (Tr. 63-64.) She takes Xanax and Ativan for her anxiety and panic attacks, which she experiences a few times a week. (Tr. 65-66.) She expressed feeling depressed as a result of her physical symptoms. (Tr. 70.)

VE Anderson testified that a hypothetical individual with Plaintiff's education and experience, who could sit for six hours out of an eight-hour work day, change positions every fifteen minutes, lift ten pounds occasionally, exert bilateral manual dexterity frequently, and exert overhead and directional reaching frequently, could perform Plaintiff's past work as a receptionist. (Tr. 89-90.) However, if the same hypothetical individual could only occasionally exert reaching and bilateral dexterity, she would not be able to perform Plaintiff's past work. (Tr. 90-91.) VE Anderson noted that such an individual could, on the other hand, perform the occupations of a call-out operator, surveillance system monitor, or telephone quotation clerk. (Tr. 91.) She added that the individual could be off-task up to ten percent of the workday. (Tr.

94.) However, the hypothetical individual would not be able to perform these jobs if she needed three fifteen-minute work breaks per day and two unscheduled days off per month. (Tr. 93.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give

substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as

7

work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ

proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

9

## III.     DISCUSSION

In his October 26, 2015 decision, ALJ Rodriguez properly applied the five-step disability test before determining that Plaintiff was not disabled. (Tr. 13-22.) The ALJ's findings are supported by substantial credible evidence. There is no basis for remand or reversal because the ALJ appropriately considered all of Plaintiff's medically-supported complaints as evidenced by her consultative visits and medical treatment.

At step one of the five-step test, ALJ Rodriguez determined that Plaintiff has not engaged in substantial gainful activity since filing her application. (Tr. 15.); *see* 20 C.F.R. § 416.971 *et seq*. At step two, the ALJ found that Plaintiff's bulging spinal discs, lumbar facet hypertrophy, and foot fracture are severe impairments because they cause more than minimal limitations and are well-documented in the record. (Tr. 15.); *see also* 20 C.F.R. § 416.920(c). He also acknowledged that Plaintiff suffers from depression and anxiety, but determined that these mental impairments only mildly limit her ability to perform basic mental work activities. (Tr. 15-16.) The ALJ cited the following facts in support of his determination: (1) as indicated in her function report, Plaintiff regularly drives a car, helps her daughter with homework, shops in food and clothing stores, and prepares meals; (2) her mental health treatment is limited to routine oral medications prescribed by her primary care physician; (3) she spends time socializing with her daughter, talks on the phone often, and spends time with others once every two weeks; and (4) she has never experienced an episode of decompensation that has been of extended duration. (Tr. 16-17, 218, 222, 283-84.) Based on the foregoing considerations, ALJ Rodriguez found that Plaintiff's medically-determinable mental impairments are nonsevere. (Tr. 17.) In reaching this conclusion, the ALJ also addressed Plaintiff's alleged learning disability, finding that it was "not actually documented as a medically determinable impairment in this case[,]" and that even if it

10

were, her daily activities and prior work as a receptionist suggested that it is not severe.[1]  (Tr. 17, 47-50, 213, 218.)  Furthermore, the ALJ explained that the objective medical evidence in the record did not support Plaintiff's complaints of lower-extremity pain radiating from her back, neuropathy in her upper extremities, migraine headaches, arthritis in her knees and hips, and a cyst in her kneecap.  (Tr. 18, 276-80, 288-94, 404.)

At step three, ALJ Rodriguez found that Plaintiff does not have an impairment that meets the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 4163920(d), 416.925, and 461.926).  (Tr. 18-19.)  Plaintiff's impairments were compared with those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00B2b, 1.02, and 1.04.[2]  (*Id.*)  In considering § 1.00B2b, the ALJ found that there was no evidence in the record to suggest that Plaintiff was prevented from ambulating effectively.  (Tr. 18-19, 218-20, 406.)  In fact, at her most recent podiatric evaluation in March 2015, her doctor noted that she "can heel and toe walk with ease, as well as arise from a seated position unassisted."  (Tr. 18, 406.)  With regard to § 1.02, the ALJ noted that Plaintiff's x-rays did not reveal any gross deformities, with the exception of the bunion on her left foot.  (Tr. 18.)  However, because the bunion had only been bothering her for four months, the ALJ concluded that the condition had not persisted for the requisite duration under the regulations.  (Tr. 18, 405-06.); *see also* 20 C.F.R. § 416.905(a).  Finally, in comparing Plaintiff's spinal injuries with those listed in § 1.04, the ALJ explained that Plaintiff's nerve root compression did not meet the durational requirement for disability, and her clinical records did not reveal nonradicular pain and weakness as listed in § 1.04C.  (Tr. 18-19, 369-71.)  The ALJ's omission of Plaintiff's obesity is inconsequential given that Plaintiff did not raise

---

[1] This Court notes that Plaintiff's learning disability diagnosis was based on a consultative visit; it was not made by a treating doctor or psychologist.  (Tr. 285.)

[2] § 1.00B2b addresses ambulation, § 1.02 addresses major dysfunction of joints, and § 1.04 addresses disorders of the spine.

weight-related issues in her application. (Tr. 112, 211-16.) Rather, her Disability Report, dated April 1, 2013, noted that Plaintiff was "concerned with her recent weight loss." (Tr. 208.)

Thereafter, ALJ Rodriguez followed the proper two-step process to determine Plaintiff's RFC. (Tr. 19.) At the first step, he found that Plaintiff's alleged foot and back injuries, which were corroborated by x-rays and her podiatric clinical findings, could reasonably be expected to cause pain in those areas. (Tr. 19-20.) The ALJ also determined that Plaintiff's motor vehicle accident in August 2013 could reasonably be expected to create leg, neck, and mid-back pain, and worsen her pre-existing foot and lower back pain. (Tr. 20, 308-10.) As such, she would be limited to carrying light objects, and she would be expected to need a cane. (Tr. 19-20, 276-80, 295, 298.)

At the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, as they relate to her spinal impairments, were not entirely credible. (Tr. 20.) He explained that Plaintiff's treatment and diagnostic records did not support her subjective complaints (i.e., that her arms and legs would give out, she needed to sit while cooking, she spent an average day shifting about, and she could not turn her head to the left).[3] (Tr. 20, 69-70, 74, 76-78, 295, 308-10.) The ALJ also found that Plaintiff's reported daily living activities were consistent with a finding that she was capable of sedentary exertion. (Tr. 21.) He noted that despite Plaintiff's complaints that her day-to-day activities had become more limited, the record reflected that she had planned trips to Florida and Cape May after filing her disability application. (Tr. 21, 288, 290.) The ALJ accorded minimal weight to Dr. Thakur's

---

[3] As discussed in the ALJ's decision, Plaintiff's Nerve Conduction Study did not suggest that she had radiculopathy. (Tr. 20, 298-310.) Signs of nerve root compression had not persisted for the requisite length of time. (Tr. 20, 369-70.); *see also* 20 C.F.R. § 416.905(a). As of March 2015, her podiatrist reported that her deep tendon reflexes were normal, sensation was intact, and motor function was without focal deficit. (Tr. 20, 406.) Although she underwent physical therapy and epidural injections between August 2013 and March 2014 for her spine, afterwards, she received no further care other than limited prescription pain medications. (Tr. 20-21, 288-94, 319-403.)

12

opinion that Plaintiff had limitations as to standing, walking, climbing, bending, and lifting, because the doctor failed and refused to quantify his opinion. (Tr. 21, 276-80.) The ALJ also gave little weight to the opinions of the DDS medical consultants who participated in prior adjudications. As explained in the underlying decision, the DDS medical consultants did not personally examine Plaintiff, and they did not have the opportunity to review the substantial new medical evidence received at the hearing level. (Tr. 21.) It was well within the ALJ's purview to reject medical conclusions that were not supported by credible evidence. Based on his reasoning and analysis, the ALJ concluded that Plaintiff has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a).[4] (Tr. 19.)

Given Plaintiff's RFC, the ALJ determined at step four that Plaintiff is capable of performing her prior work as a receptionist, which is a sedentary occupation. (Tr. 21-22, 89.) It is clear that he considered the vocational expert's testimony as well as Plaintiff's own descriptions of her past work experience. (Tr. 22, 213.) After properly following the five-step disability test, ALJ Rodriguez determined that Plaintiff is not disabled under the Act. There is substantial credible evidence in the record to support his decision.

## IV. CONCLUSION

Because this Court finds that ALJ Rodriguez's factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*<br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).